J-S18025-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANGELICA NICOLE RIVERA | : | |
| | : | |
| Appellant | : | No. 1297 MDA 2025 |

Appeal from the Judgment of Sentence Entered December 19, 2023
In the Court of Common Pleas of Columbia County Criminal Division at
No(s): CP-19-CR-0000091-2022

BEFORE: DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.: **FILED: AUGUST 7, 2026**

Angelica Nicole Rivera ("Rivera") appeals from the judgment of sentence imposed by the Columbia County Court of Common Pleas ("trial court") following her convictions of one count each of third-degree murder and tampering with physical evidence, and two counts of endangering the welfare of children.[1] Rivera's counsel, Attorney Hugh Taylor ("Counsel"), seeks to withdraw from representation pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009). Upon review, we grant Counsel's petition to withdraw and affirm Rivera's judgment of sentence.

---

[1] 18 Pa.C.S. §§ 2502(c), 4910(1), 4304(a).

Rivera lived in an apartment with her boyfriend, Jedidiah LaBella ("LaBella"), and her two daughters, one-year-old A.D. and two-year-old Ab.D. On June 26, 2021, Rivera found A.D. severely beaten and deceased on the bed in the adults' bedroom.

After changing A.D.'s diaper and moving her to the living room floor, Rivera eventually called 911, police arrived and found A.D. cool to the touch, with bruising on her face, and a bloody onesie and wipes in the trashcan. After investigation, police determined that LaBella and Rivera were A.D.'s only caregivers on the day in question, and Rivera was the only adult in the apartment during the timeframe estimated to be when A.D. died. The estimated time of death is no later than 1:50 p.m.

On December 15, 2021, police arrested Rivera, and the Commonwealth charged her with criminal homicide, two counts of endangering the welfare of children (one for each of her children), and tampering with evidence. On the same day, following her preliminary arraignment, the trial court denied Rivera bail. On February 1, 2022, Rivera filed a pretrial motion for access to electronic discovery while awaiting trial. The trial court granted the motion and ordered the jail to allow her to review the electronic discovery. On June 22, 2022, Rivera filed motions for habeas corpus relief and to set bail. The trial court denied both motions and the case proceeded to a jury trial.

On October 20, 2023, the jury found her guilty of the aforementioned crimes. The trial court sentenced Rivera to twenty to forty years in prison for

third-degree murder followed by two consecutive terms of twelve to eighty-four months of incarceration for each of her child endangerment convictions.[2] The trial court imposed a fine for tampering with physical evidence. Rivera filed a post-sentence motion, arguing the convictions were against the weight of the evidence and seeking reconsideration of her sentence. The trial court denied the motion.

On January 18, 2024, Rivera filed a timely notice of appeal, followed by a concise statement of errors wherein she challenged the weight of the evidence. On June 11, 2024, however, this Court dismissed Rivera's appeal for failure to file a brief. *See Commonwealth v. Rivera*, 95 MDA 2024 (Pa. Super. filed Jun. 11, 2024) (per curiam order).

On December 19, 2024, Rivera pro se filed a petition pursuant to the Post Conviction Relief Act ("PCRA"). The PCRA court appointed counsel, who filed an amended PCRA petition seeking reinstatement of Rivera's direct appeal rights. On August 21, 2025, the PCRA court reinstated Rivera's direct appeal rights. On September 16, 2025, Counsel filed a timely notice of appeal followed by a concise statement explaining his intent to file an *Anders* brief. On January 20, 2026, Counsel filed an *Anders* brief.

---

[2] The standard range sentence for third-degree murder, given Rivera's prior record score of zero, is 96 months to 240 months. The standard range sentence for endangering the welfare of children graded as a felony of the third degree is three to twelve months.

- 3 -

When faced with an **Anders** brief, we may not review the merits of the underlying issues or allow Counsel to withdraw without first evaluating compliance with all requirements set forth in **Anders** and **Santiago**. **Commonwealth v. Yorgey**, 188 A.3d 1190, 1195 (Pa. Super. 2018). There are mandates that counsel seeking to withdraw pursuant to **Anders** must follow, which arise because a criminal defendant has a constitutional right to a direct appeal and to be represented by counsel for the pendency of that appeal. **Commonwealth v. Woods**, 939 A.2d 896, 898 (Pa. Super. 2007).

> Direct appeal counsel seeking to withdraw under **Anders** must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an **Anders** brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof.
>
> **Anders** counsel must also provide a copy of the **Anders** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed pro se or raise any additional points worthy of this Court's attention.
>
> If counsel does not fulfill the aforesaid technical requirements of **Anders**, this Court will deny the petition to withdraw and remand the case with appropriate instructions (e.g., directing counsel either to comply with **Anders** or file an advocate brief on [a]ppellant's behalf).

**Id.** (citations omitted).

Additionally, **Santiago** sets forth precisely what an **Anders** brief must contain:

> [T]he **Anders** brief that accompanies court-appointed counsel's petition to withdraw … must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer

- 4 -

to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Substantial compliance with the *Anders* and *Santiago* requirements is sufficient. *Commonwealth v. Redmond*, 273 A.3d 1247, 1252 (Pa. Super. 2022). If counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the record to determine whether there are any non-frivolous issues that the appellant could raise on appeal. *Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (en banc).

We conclude that Counsel has complied with the requirements outlined above. Counsel filed a petition to withdraw and an *Anders* brief with this Court stating that the appeal is wholly frivolous. Counsel attached to his petition to withdraw the letter he sent to Rivera informing her that he was filing an *Anders* brief and advising Rivera of her right to proceed pro se or to retain new counsel and raise any additional issues that she deems worthy of this Court's consideration. Letter, 1/20/2026, at 2. In his brief, Counsel provided a summary of the procedural history and facts of the case. *Anders* Brief at 5-8. Counsel also refers to material in the record that could arguably support this appeal and cites to relevant authority to support his conclusion that the claims Rivera seeks to raise are wholly frivolous. *Anders* Brief at 11-22. Accordingly, we conclude that Counsel has substantially complied with

- 5 -

the procedural requirements for withdrawing from representation. ***See***

***Redmond***, 273 A.3d at 1252.

We thus turn our attention to the issues Counsel raised in the ***Anders***

brief, which include challenges to the sufficiency of the evidence to support

Rivera's convictions, the weight of the evidence, discretionary aspects of

sentencing, the trial court's denial of pretrial habeas corpus and bail motions,

and the admissibility of certain evidence. ***Anders*** Brief at 11-22.

## Sufficiency of the Evidence

### Third-Degree Murder

Rivera claims that the Commonwealth failed to present sufficient

evidence to support her third-degree murder conviction. ***Anders*** Brief at 17-

19. She claims that she did not commit the murder. ***Id.*** at 18.

We review a challenge to the sufficiency of the evidence pursuant to the

following standard:

> Because a determination of evidentiary sufficiency presents a
> question of law, our standard of review is de novo and our scope
> of review is plenary. In reviewing the sufficiency of the evidence,
> we must determine whether the evidence admitted at trial and all
> reasonable inferences drawn therefrom, viewed in the light most
> favorable to the Commonwealth as verdict winner, were sufficient
> to prove every element of the offense beyond a reasonable doubt.
> The facts and circumstances established by the Commonwealth
> need not preclude every possibility of innocence. It is within the
> province of the [factfinder] to determine the weight to be accorded
> to each witness'[] testimony and to believe all, part, or none of
> the evidence. The Commonwealth may sustain its burden of
> proving every element of the crime by means of wholly
> circumstantial evidence. Moreover, as an appellate court, we may
> not re-weigh the evidence and substitute our judgment for that of
> the [factfinder].

***Commonwealth v. Scott***, 325 A.3d 844, 849 (Pa. Super. 2024) (citation omitted).

To sustain a conviction of third-degree murder, the Commonwealth must establish "(1) an intentional act, (2) done with malice, that (3) results in an unintentional killing." ***Commonwealth v. Arrington***, 247 A.3d 456, 461 (Pa. Super. 2021) (citation omitted); ***see also*** 18 Pa.C.S. § 2502(c). "Malice is present if the defendant consciously disregarded an unjustified and extremely high risk that his conduct might cause death or serious bodily injury." ***Commonwealth v. Peters***, 355 A.3d 1270, 1290 (Pa. 2026). "Malice comprehends not only a particular ill-will, but also a wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." ***Commonwealth v. Vansyckel***, 341 A.3d 174, 179 (Pa. Super. 2025) (en banc) (citation omitted). A factfinder may infer malice from the totality of the circumstances. ***Commonwealth v. Golphin***, 161 A.3d 1009, 1018 (Pa. Super. 2017).

LaBella testified that on the day in question he left work at 8:00 a.m. and made two stops before he arrived home between 8:30 a.m. and 8:45 a.m. N.T., 10/16/2023, at 131, 133. When he entered the apartment, he quickly looked into Rivera's daughters' bedroom and observed both girls were sleeping. *Id.* at 133-34. Afterward, he entered Rivera's bedroom, saw her sleeping, and took a shower. *Id.* at 136. He then went to his mother's house.

*Id.* at 138. Subsequently, he stopped to purchase tools to fix the car he was driving because it had been overheating. *Id.* at 138-39. He returned home but did not see A.D. or Rivera while he was there. *Id.* at 140-41. He then left the apartment to purchase milk, a pregnancy test, and more tools to fix the car. *Id.* at 142-43. Upon returning home, he started working on the car on the street outside of the apartment. *Id.* at 143, 146. During this time, he observed Rivera leave the apartment to purchase marijuana with a neighbor. *Id.* at 145-46. LaBella stated that he did not enter the apartment while Rivera was gone. *Id.* at 146-47. After the neighbor and Rivera returned, LaBella smoked marijuana with them at the neighbor's house. *Id.* at 148. LaBella then returned to the street in front of the apartment and continued to work on the car and Rivera went back into the apartment. *Id.* at 148-49. Shortly afterward, Rivera told LaBella that A.D. was not breathing. *Id.* at 150-51. LaBella ran into the apartment, found A.D. lying on the bed in the adults' bedroom, and began attempting CPR. *Id.* at 151-52. He then called his mother, who contacted LaBella's neighbor, Shannon Wall (a firefighter), to help A.D. *Id.* at 82, 153. During this time, Rivera moved A.D. to the living room floor. *Id.* at 153. When Wall arrived to offer to help A.D., LaBella told her A.D. was fine and closed the door. *Id.* at 154; *see also id.* at 84 (Wall confirmed that LaBella told her the baby was fine). A few minutes later, he went outside and told Wall and her husband to go back and help A.D. *Id.*

LaBella remained outside of the apartment until emergency services arrived. *Id.* at 155.

Coroner Jeremy Reese testified that A.D.'s cause of death was repeated blunt force, and manner of death was homicide. N.T., 10/16/2023, at 258. Coroner Reese used pictures from the autopsy to describe A.D.'s injuries, which included contusions on her torso, multiple fractures on her skull, a laceration on her lip, bruises in her liver area, and blood in her abdominal wall. *Id.* at 235-36.

Detective Reagan Rafferty, the investigating detective, testified that he used Google Maps pinpoints to explain both LaBella's and Rivera's movements throughout the day in question. N.T., 10/18/2023, at 521. This data established LaBella was outside on the street and running errands; he was not shown within the apartment during significant timeframes when the time of death had been estimated. *Id.* at 521, 524-25. On the other hand, Rivera was pinpointed in the apartment at the relevant times. N.T., 10/17/2023, at 468-69, 478-80. He testified that Rivera's phone records showed that she had entered the apartment at approximately 1:46 p.m., attempted to call her father at approximately 1:50 p.m., texted her father "[d]ad, [A.D.'s] passed away" at approximately 1:51 p.m., and she did not call 911 until approximately 1:58 p.m. Further, Google data revealed that Rivera conducted internet searches about "child head injury concussion" near the time of A.D.'s death. N.T., 10/17/2023, at 419, 422. He also testified that Rivera gave

varying versions of the story of what happened on the day in question during her multiple police interviews. *Id.* at 399, 430, 433.

Rivera testified that on the day in question LaBella woke her up informing her that A.D. was crying. N.T., 10/20/2023, at 681. She stated that she cleaned dried blood off of A.D.'s nose and lip that morning. *Id.* at 682. When LaBella returned from his mother's house, Rivera said he came into the bedroom and spoke to her about getting more items from the store. *Id.* at 683. After LaBella left, Rivera remained in the bedroom with A.D. *Id.* at 684. After LaBella returned home for a second time, Rivera left to purchase marijuana with her neighbor. *Id.* at 686-87. When she left, A.D. was on Rivera's bed. *Id.* at 686. Rivera testified that when she returned home, she smoked a cigarette on her porch and then went to her neighbor's house with LaBella. *Id.* at 688. When she returned to the apartment, she claims she found A.D. face down on the bed with a pillow on top of her. *Id.* at 690. She went outside to tell LaBella that A.D. was "not breathing." *Id.* After attempting CPR, Rivera moved A.D.'s body to the living room floor. *Id.* at 692. Rivera testified that when Wall arrived at the apartment, LaBella told her A.D. was fine and closed the door. *Id.* at 682-93; *but see* N.T., 10/16/2023, at 84 (Wall testified that Rivera also told her "the baby is fucking fine"). She claims LaBella went outside to bring Wall back into the apartment after Rivera yelled at him and told him he needed to open the door. N.T., 10/20/2023, at 693. Further, Rivera admitted that she did conduct a Google

search for concussions, but that this occurred approximately five days prior to A.D.'s death, after A.D. had been injured in a separate accident. *Id.* at 699-700.

Viewing the evidence in a light most favorable to the Commonwealth, as the verdict winner, we conclude that the evidence supported the jury's determination that Rivera committed the murder. Although Rivera attempted to implicate LaBella in her testimony, the jury was free to believe all, part, or none of what she presented. *See Scott*, 325 A.3d at 849. The location data established that she was the only caregiver in the apartment with A.D. around the time of her death. *See Commonwealth v. Mackert*, 781 A.2d 178, 186 (Pa. Super. 2001) (stating that evidence was sufficient to establish appellant killed child where she was caring for child and the numerous injuries could have been inflicted immediately prior to child's death). The circumstantial evidence sufficiently established that Rivera killed A.D.

Additionally, Rivera acted with malice because A.D. died by blunt force trauma that caused numerous injuries, including contusions on her torso, multiple skull fractures, bruises in the area of her liver, and blood in her abdominal wall. *See Commonwealth v. Brunson*, 347 A.3d 808, 819 (Pa. Super. 2025) (finding the evidence sufficient to support appellant acted with malice where a child died as a "result of compressive force pushing down on the victim's ribcage which bruised the underside of the liver as it pressed against the spine"); *Commonwealth v. Hardy*, 918 A.2d 766, 774 (Pa.

Super. 2007) (concluding that appellant grabbing an infant with enough force to fracture his ribs and causing his head to strike an object established malice to support the third-degree murder conviction). Accordingly, there is sufficient evidence to prove beyond a reasonable doubt that Rivera possessed the requisite malice to be convicted of third-degree murder. **See Brunson**, 347 A.3d at 819-20.

As the evidence unquestionably established the elements of third-degree murder and identified Rivera as the only person who could have committed the crime, we agree with Counsel that this claim is frivolous.

<u>Endangering the Welfare of Children</u>

Rivera further contends that the evidence was insufficient to support her convictions of endangering the welfare of children. **Anders** Brief at 19-20.

Pursuant to section 4304 of the Pennsylvania Crimes Code, "a parent, guardian, or other person supervising the welfare of a child under eighteen years of age" is guilty of endangering the welfare of a child "if he knowingly endangers the welfare of the child by violating a duty of care, protection, or support." 18 Pa.C.S. § 4304.[3] The Commonwealth must establish

    (1)   The accused was aware of his/her duty to protect the child;

---

[3] Endangering the welfare of children is graded as a misdemeanor of the first degree by default, however, it is increased one grade if the child was under six years of age at the time of the offense. 18 Pa.C.S. § 4304(b)(2). A.D. was one year old and Ab.D. was two years old at the time of the offense, therefore, Rivera's convictions were graded as felonies of the third degree rather than misdemeanors of the first degree.

(2)     The accused was aware that the child was in circumstances that could threaten the child's physical or psychological welfare; and

(3)     The accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Commonwealth v. Delamarter*, 302 A.3d 1195, 1201 (Pa. Super. 2023) (brackets and citation omitted).  A parent has a duty of care for their child. *See Commonwealth v. Foster*, 764 A.2d 1076, 1082-83 (Pa. Super. 2000) (upholding a conviction of endangering the welfare of children because "every parent … has a duty of care to their child, at the very least, to avert the child's untimely death").

Rivera's neighbor, Vanessa Klinesmith, testified that Rivera often left both her two-year-old daughter and A.D. home alone for extended periods of time.  N.T., 10/16/2023, at 68-70.  In fact, on the day in question, Rivera left the children alone while she left the house to purchase marijuana and smoke it at her neighbor's home.  N.T., 10/20/2023, at 686, 688; N.T., 10/16/2023, at 145-48.

This evidence, viewed in a light most favorable to the Commonwealth, establishes that she is guilty of endangering the welfare of children on both counts.  As our Supreme Court has previously held, the act of leaving young children alone and "unattended for a sustained period … by a parent who had the duty to provide for their safety and ignored that responsibility for her personal pleasure," constitutes endangering the welfare of children.

*Commonwealth v. Skufca*, 321 A.2d 889, 892-93 (Pa. 1974).[4]  Moreover,

as discussed above, Rivera caused the death of A.D. through blunt force

trauma.

As such, there is no question that the evidence presented was sufficient

to support River's convictions of endangering the welfare of her children.

Accordingly, this claim is frivolous.

**Weight of the Evidence**

Rivera contends that the weight of the evidence presented at trial does

not support her third-degree murder conviction.  *Anders* Brief at 15-17.  She

claims there were conflicts in testimony that should have established LaBella

was the culprit.  *Id.* at 16.

The following legal principles apply to a trial court's consideration of a

challenge to the weight of the evidence supporting a conviction:

> An allegation that the verdict is against the weight of the
> evidence is addressed to the discretion of the trial court.  A new
> trial should not be granted because of a mere conflict in the
> testimony or because the judge on the same facts would have
> arrived at a different conclusion.  A trial judge must do more than
> reassess the credibility of the witnesses and allege that he would
> not have assented to the verdict if he were a juror.  Trial judges,
> in reviewing a claim that the verdict is against the weight of the
> evidence do not sit as the thirteenth juror.  Rather, the role of the
> trial judge is to determine that notwithstanding all the facts,

---

[4]  Although the provision at issue in *Skufca* was 18 P.S. § 4727, we have previously recognized that this statute was repealed and superseded by section 4304 of the Crimes Code.  *Commonwealth v. Miller*, 600 A.2d 988, 991 n.1 (Pa. Super. 1992).  Indeed, the *Skufca* Court indicated the applicability of its holding under section 4304.  *See Skufca*, 321 A.2d at 893 n.7.

- 14 -

certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

Thus, to allow an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court.

*Commonwealth v. Juray*, 275 A.3d 1037, 1046-47 (Pa. Super. 2022)

(quotation marks and citations omitted).

Our standard of review for weight claims, however, differs from that of the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 1047 (citation omitted).

The trial court rejected Rivera's weight claim and held that the jury, as the trier of fact, appropriately weighed the testimony of each witness and made credibility determinations in support of its unanimous guilty verdict. Trial Court Opinion, 3/5/2024, at 4-5. The trial court concluded, based upon the evidence presented, "[t]he murder could only have been committed by [Rivera] or LaBella, but the great weight of the evidence points to [Rivera]." *Id.* at 4. It observed that Rivera was in charge of A.D. during the day in

- 15 -

question, her location data pinpointed her within the apartment at the relevant times, she found and moved A.D.'s body, and she gave multiple different versions of the story to the police during her interviews. *Id.* at 4-5. The trial court explains that a mere possibility that LaBella could have committed the murder goes against the standard applicable to a weight claim. *Id.* at 5.

We conclude that the trial court did not abuse its discretion in denying Rivera's challenge to the weight of the evidence to support her conviction. Although Rivera contends that there were inconsistencies in witness testimony, rendering her convictions unsound, it was the jury's responsibility to pass upon the credibility of the witnesses, resolve contradictory testimony, and weigh the evidence. *See Commonwealth v. Clemons*, 200 A.3d 441, 464 (Pa. 2019) (the jury is the factfinder and the sole arbiter of witness credibility). To the extent Rivera seeks for this Court to reassess the credibility of the witnesses and reweigh the evidence in her favor, we decline to do so. *See Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact") (citation omitted). The jury found, based on its credibility determinations, that Rivera committed the murder—a conclusion with ample support in the record.

Indeed, as noted above, she was the sole caregiver for A.D. during the relevant timeframe on the day in question, while LaBella was doing things away from and outside of their home. Rivera's location showed her being

inside the apartment during the estimated time of death while LaBella's location did not leave the street in front of the building during that time period. N.T., 10/18/2023, at 511-12, 521, 524-25; N.T., 10/17/2023, at 455, 468-69, 478-80. Rivera discovered and moved the body and did not call for help until approximately seven minutes after realizing A.D. was dead. N.T., 10/20/2023, at 742. Accordingly, we have no basis to grant relief on her weight claim, rendering it frivolous. *See Commonwealth v. Widmer*, 744 A.2d 745, 752 (Pa. 2000) (stating it is improper to grant a new trial on a weight of the evidence claim where another factfinder might arrive at a different result based on the same facts).

### Discretionary Aspects of Sentencing

Next, Rivera argues that the trial court imposed an excessive sentence. *Anders* Brief at 20-22. This claim challenges the discretionary aspects of her sentence. *See Commonwealth v. Lee*, 876 A.2d 408, 411 (Pa. Super. 2005) (finding that a claim that a sentence was manifestly excessive constitutes a challenge to the discretionary aspects of the sentence).

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. Knox*, 165 A.3d 925, 929 (Pa. Super. 2017) (citation omitted). To invoke this Court's review, Rivera must satisfy the following four-part test:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant

- 17 -

filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); (4) the appellant raises a substantial question for our review.

*Commonwealth v. Rivera*, 312 A.3d 366, 376-77 (Pa. Super. 2024) (quotation marks, brackets, and citation omitted). A substantial question is determined on a case-by-case basis and exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. McCain*, 176 A.3d 236, 240 (Pa. Super. 2017) (citation omitted).

Here, Rivera filed a timely appeal following the restoration of her direct appeal rights and raised her claim in a post-sentence motion. The *Anders* brief did not include a Rule 2119(f) statement; however, because the Commonwealth did not object to its omission, we may overlook it. *See Commonwealth v. Kiesel*, 854 A.2d 530, 532-33 (Pa. Super. 2004) (explaining that when the appellant has not included a Rule 2119(f) statement, and the appellee has not objected, this Court may ignore the omission and determine if there is a substantial question); *see also Commonwealth v. Zeigler*, 112 A.3d 656, 661 (Pa. Super. 2015) ("Where counsel files an *Anders* brief, this Court has reviewed the matter even absent a separate Pa.R.A.P. 2119(f) statement.") (citations omitted).

Rivera fails to raise a substantial question for our review as she does not articulate "the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." ***Commonwealth v. Watson***, 228 A.3d 928, 935-36 (Pa. Super. 2020). (citation omitted); ***see also Commonwealth v. Radecki***, 180 A.3d 441, 468 (Pa. Super. 2018) (noting that "this Court does not accept bald assertions of sentencing errors"). Pointedly, "[b]ald allegations of excessiveness ... do not raise a substantial question to warrant appellate review." ***Watson***, 228 A.3d at 935. Likewise, where a sentence falls within the standard range of the sentencing guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code, and such a sentence generally does not raise a substantial question. ***Commonwealth v. Antidormi***, 84 A.3d 736, 760 n.20 (Pa. Super. 2014).

Despite this defect, we will address Rivera's claim to determine whether it is wholly frivolous. ***See Commonwealth v. Lilley***, 978 A.2d 995, 998 (Pa. Super. 2009) (stating that where counsel files an ***Anders*** brief, this Court will review discretionary sentencing claim despite the failure to raise a substantial question to determine whether counsel is entitled to withdraw).

Our standard of review is well established:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. Appellant must establish, by reference to the record, that the sentencing court ignored or

- 19 -

misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Devine***, 326 A.3d 935, 939 (Pa. Super. 2024) (citations omitted). In addition to the abuse of discretion standard, our review is confined by section 9781(c) and (d) of the Sentencing Code:

**(c) Determination on appeal.--**The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

**(d) Review of record.--**In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(c), (d).

If the trial court was informed by a presentence investigation report, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed."[5] **Commonwealth v. Miller**, 275 A.3d 530, 535 (Pa. Super. 2022); **see also Commonwealth v. Rhoades**, 8 A.3d 912, 919 (Pa. Super. 2010) (noting that where "the sentencing court had the benefit of a pre[]sentence investigation report, we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors") (citation and quotation marks omitted).

The record reflects that the trial court had the benefit of a presentence investigation report. N.T., 12/19/2023, at 5. The trial court further explained the basis for its sentence on the record, including Rivera's behavior when responders first arrived at the apartment to help A.D., her changing stories to the police, placing the blame on others, and the gruesome nature of A.D.'s injuries. **Id.** at 14-16.

Rivera points to nothing in the record to establish the trial court abused its discretion in imposing her sentence. As stated, the sentence issued is

---

[5] The sentencing factors include "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). "The balancing of these [s]ection 9721(b) sentencing factors is within the sole province of the sentencing court." **Commonwealth v. Baker**, 311 A.3d 12, 19 (citation omitted).

- 21 -

within the standard range and the trial court both implicitly (through the presentence report) and explicitly (on the record) considered both the mitigating evidence and requisite sentencing factors. *See Commonwealth v. Hill*, 210 A.3d 1104, 1117 (Pa. Super. 2019) (finding where a sentence is within the standard range of the guidelines, in combination with a presentencing investigation report, Pennsylvania law considers the sentence appropriate). As such, there is no basis to overturn the trial court's sentencing decision. *See* 42 Pa.C.S. § 9781(c), (d). Therefore, this claim is frivolous.

### Pretrial Motions

Rivera further challenges the denial of several pretrial motions, including an order denying her bail, her motion for habeas corpus, and her motion for reviewing electronic discovery. *Anders* Brief at 11-12. We address each contention in turn.

#### Motion for Discovery

Although Rivera purports to challenge the denial of her request to access electronic discovery, as stated above, the trial court granted Rivera's motion. *See* Trial Court Order, 2/22/2023. Rivera acknowledges this in her brief. *See Anders* Brief at 11. Thus, this claim is frivolous.

#### Motion Denying Bail

This Court reviews an order denying bail for an abuse of discretion. *See Commonwealth v. Bishop*, 829 A.2d 1170, 1172 (Pa. Super. 2003). The Pennsylvania Constitution describes three exceptions to the allowance of bail:

> All prisoners shall be bailable by sufficient sureties, unless for capital offenses or for offenses for which the maximum sentence is life imprisonment or unless no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community when the proof is evident or presumption great.

PA. CONST. art. I, § 14.

> To satisfy one of these exceptions, the Commonwealth must offer "evident" proof or establish a "great" presumption that the accused: (1) committed a capital offense, (2) committed an offense that carries a maximum sentence of life imprisonment, or (3) presents a danger to any person and the community, which cannot be abated using any available bail conditions. If the Commonwealth fails to satisfy its burden of proof, the trial court cannot deny bail.

*Commonwealth v. Talley*, 265 A.3d 485, 513 (Pa. 2021).

The trial court explained that it denied Rivera bail because the case involved a charge of criminal homicide generally, which includes the charge of first-degree murder; if she had been found guilty of first-degree murder, she would have faced a mandatory penalty of life imprisonment. Trial Court Opinion and Order, 1/30/2023, at 2; *see also* 18 Pa.C.S. § 1102(a)(1) (stating "a person who has been convicted of a murder of the first degree … shall be sentenced to death or to a term of life imprisonment"). Because courts may prohibit bail as to cases involving a maximum sentence of life imprisonment under the Pennsylvania Constitution, the trial court did not abuse its discretion when it prohibited Rivera's bail. *See Talley*, 265 A.3d at 513. Therefore, this claim is frivolous.

<u>Motion for Habeas Corpus</u>

Next, Rivera contends that the Commonwealth did not establish a prima facie case during the preliminary hearing, and the trial court therefore erred by denying her pretrial motion for habeas corpus. *Anders* Brief at 12.

The jury found Rivera guilty beyond a reasonable doubt following a jury trial, rendering moot any claim as to whether the Commonwealth established a prima facie case during the preliminary hearing. *See Commonwealth v. Lee*, 662 A.2d 645, 650 (Pa. 1995) ("a finding at a preliminary hearing that sufficient evidence exists to require a defendant to stand trial is not subject to review if there has been a subsequent independent judicial judgment that there is sufficient evidence to require the defendant to stand trial") (citation omitted). Therefore, this claim is frivolous as well.

**Admission of Evidence**

Lastly, Rivera challenges the admission of certain evidence at trial. *Anders* Brief at 12-15. When the trial court admits evidence, the party must, on the record: (A) "make a timely objection, motion to strike, or motion in limine;" and (B) state the specific ground for the objection, unless the ground was apparent from the context. Pa.R.E. 103(a); *see also Commonwealth v. Spone*, 305 A.3d 602, 612 (Pa. Super. 2023) ("With respect to preserving challenges to the admission or exclusion of evidence, Pa.R.E. 103 addresses rulings on evidence and requires a contemporaneous objection in order to preserve a claim of error in the admission of evidence."). Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.

- 24 -

Pa.R.A.P. 302(a). If an evidentiary issue is properly preserved, this Court's review is limited to determining whether the trial court abused its discretion. ***Commonwealth v. Dengler***, 890 A.2d 372, 379 (Pa. 2005).

### Exhibit C-31

Rivera challenges the admission of Commonwealth's exhibit C-31, which was a photograph showing the victim's peritoneum; he asserts that the witness could not properly identify what was in the photo. ***Anders*** Brief at 13.

Rivera's counsel initially objected to Commonwealth's exhibit C-31 because the witness could not identify the organ in the image. N.T., 10/16/2023, at 267. The trial court admitted the photo over the objection because the jury had the ability to determine the credibility of the testimony. ***Id.*** The trial court instructed the jury to accept the witness' testimony for what they heard it to be because the witness testified to "what he knew [the organ] was and what he couldn't say it was." ***Id.*** Thereafter, counsel withdrew her objection to this exhibit. ***Id.***

As Rivera acquiesced to the admission of the evidence, she cannot now claim that the trial court abused its discretion by admitting it. ***See Commonwealth v. Johnson***, 301 A.2d 632, 634 (Pa. 1973) (issue based upon withdrawn objection is waived and cannot be raised on appeal) (citations omitted). This claim is frivolous.

### Demeanor Testimony

Rivera further argues that Detective Rafferty was not permitted to state that Rivera's "demeanor" was "nonchalant" during her police interview, contending that this constitutes expert testimony given by a lay witness. *Anders* Brief at 13-14.

Rule 701 provides that a lay witness may give opinion testimony under the following circumstances:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a)  rationally based on the witness's perception;
>
> (b)  helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c)  not based on scientific, technical, or other specialized knowledge within the scope of [Pa.R.E.] 702.

Pa.R.E. 701. The first two prongs of Rule 701 are "self-explanatory, in that they simply require that a witness'[] opinion testimony be based upon personal knowledge and be helpful to the jury in understanding the witness'[] testimony or a fact at issue." *Commonwealth v. Jones*, 240 A.3d 881, 889 (Pa. 2020). Lay witnesses, however, cannot give "opinion testimony based upon scientific, technical, or other specialized knowledge that falls within the realm of expert opinion testimony as outlined by Rule 702." *Id.* at 889-90.

Rule 702 provides that an expert witness may provide opinion testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; an

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

Under Rules 701 and 702, a police officer can testify as both a lay and expert witness. *Jones*, 240 A.3d at 890-91. An officer's testimony is lay opinion under Rule 701 "if it is limited to what he observed or to other facts derived exclusively from a particular investigation." *Id.* at 890 (citation and ellipses omitted). On the other hand, the officer "testifies as an expert when he brings the wealth of his experience as an officer to bear on those observations and makes connections for the jury based on that specialized knowledge." *Id.* (citation and brackets omitted).

During trial, the Commonwealth introduced an audio recording of Rivera's interview with Detective Rafferty. N.T., 10/17/2023, at 382, 383-84; Commonwealth Exhibit 100. After playing the audio, Detective Rafferty testified as follows, in relevant part:

[Commonwealth]: So, Detective Rafferty, we obviously listened to the entire interview. Do you have anything to say with regard to [Rivera's] demeanor during that interview?

[Detective Rafferty]: Pretty non - -

- 27 -

[Rivera's counsel]: Objection. The evidence speaks for itself. The jury can determine what [Rivera's] demeanor was.

[Trial Court]: Well, they didn't see her, so I'll overrule the objection and permit the question because it was just an audiotape, it was not a video, also.

[Detective Rafferty]: Overall, pretty nonchalant. When questions are asked, there would be moments where you would start to see what appeared to be emotions, but as you would ask the follow-up question or something more in[]depth, it would shut right back down to very straight answers and all that emotion would instantly disappear.

*Id.* at 395-96.

This statement by Detective Rafferty did not involve any specialized knowledge. Instead, his testimony was based on his observations of her behavior during the interview; he never expressed an opinion as to whether Rivera was being truthful, and he was not introduced as an expert witness. Nothing in Detective Rafferty's statement spoke to insights gained through specialized training or experience. *Cf. Jones*, 240 A.3d at 891 (finding officer provided expert opinion testimony when he "called upon the wealth of his knowledge and training as a detective with extensive experience investigating sexual assaults and made connections for the jury based on that specialized knowledge").

Detective Rafferty's personal observations were within a layperson's knowledgebase and he did not provide improper or unqualified expert testimony in this respect. Thus, there is no basis to find the trial court abused its discretion in allowing this line of questioning. *See Commonwealth v.*

*Boczkowski*, 846 A.2d 75, 97 (Pa. 2004) (noting "a lay witness is permitted to express an opinion on a matter falling within the realm of common knowledge, experience or understanding" and finding that lay witness testimony that the defendant was "serious" when he made the inculpatory statement to him was admissible). We agree with Counsel that this claim is frivolous.

### Police Interview

Lastly, Rivera observes that there was a dispute as to whether the entirety of Rivera's interview with the police would be played. *Anders* Brief at 14. Ultimately, the trial court granted Rivera's request that the entire interview be played for the jury. N.T., 10/17/2023, at 381-82. Therefore, to the extent Rivera raises a claim related the introduction of the interview, the claim is frivolous.

## Conclusion

Our independent review of the record reveals no nonfrivolous issues that Rivera could raise on appeal. *See Dempster*, 187 A.3d at 272. We therefore grant Counsel's petition to withdraw and affirm Rivera's judgment of sentence.

Petition to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/7/2026